UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| RONALD L. DAVIS, ) | CASE NO. 4:14 CV 0070 |
| ) | |
| Plaintiff, ) | JUDGE CHRISTOPHER A. BOYKO |
| ) | |
| v. ) | MEMORANDUM OF OPINION |
| ) | AND ORDER |
| ) | |
| BUREAU OF PRISONS, et al., ) | |
| ) | |
| Defendants. ) | |

CHRISTOPHER A. BOYKO, J.:

*Pro se* plaintiff Ronald L. Davis filed the above-captioned *in forma pauperis* Complaint pursuant to 42 U.S.C. §1983. At the time Plaintiff filed this action against the Bureau of Prisons, Michelle Fulgum, Jane Barnes, J. Dulop, Elizabet Choflet, J. Griffith and Unknown Defendants he was incarcerated at the Federal Correctional Institution in Elkton, Ohio (F.C.I. Elkton).[1] He later filed a Motion to Amend Complaint (Doc. No. 4), Motion for Leave to File Supplemental Pleading (Doc. No. 6), Second *Pro Se* Motion to Amend Case (Doc. No. 7), Motion for Expedited Review (Doc. No. 8), and a Motion for Temporary Restraining Order and/or Motion for Preliminary Injunction (Doc. No. 9). The Court **grants** Plaintiff's Motion to Amend Complaint (Doc. No. 4), Motion for Leave to File Supplemental Pleading (Doc. No. 6) and Second *Pro Se* Motion to Amend Case (Doc. No. 7)**.**

---

[1]On August 1, 2014, Plaintiff advised the Court that he was released from F.C.I. Elkton and is living in an apartment in Knoxville, Tennessee.

In his prayer for relief, Plaintiff seeks an Order to Show Cause why the Defendants cannot provide treatment for his "infectious disease," transfer him to a Community Corrections Center, permit him to file under a pseudonym to avoid disclosing the nature of his ailment, and $250,000.00 in compensatory and $500,000.00 in punitive damages.

Background

On or about August 24, 2013, Plaintiff filed an Inmate Request to Staff at F.C.I. Elkton. He complained the prison was "deliberately indifferent" to his medical needs because he was being "denied a diabetic diet and HS snack which is causing me hypoglycemia." (Doc. 1-1 at 24). He claims he previously raised this issue in "*Davis v. Hadden, et al.*, No 2012 U.S. Dist. LEXIS 39107."[2]

Two days after submitting his request, a Clinical Encounter with J. Dunlop indicated Plaintiff "refused a rectal at that time. His PSA is 9.8 and his dad died from prostate cancer. He needs a biopsy. He is also anemic and was on---iron in the past. 3 stool cards given." (Doc. 1-1 at 18).

An attached Medical Treatment Refusal Form reveals Plaintiff formally refused to consent to a biopsy on October 4, 2013. The annotated form indicates Plaintiff reasoned, "he has 6 weeks to release and will pursue care for this issue. Inmate understands the risks of prostate cancer since his father passed away from prostate cancer. Failure to obtain biopsy could result in delay of diagnosis and treatment of prostate cancer." (Doc. 1-1 at 21). Plaintiff signed the document with a Witness and Counselor.

In late October, Plaintiff submitted another Inmate Request To Staff form asking for Interferon and Ribaviron treatment "for my HCV which was detected in 1996." (Doc. 1-1 at 23.) A Record of Medical Care shows he was examined October 30, 2013 by medical staff at F.C.I.

---

[2]The Court presumes this is a reference to *Davis v. Coakley*, No. 4:13-cv-02765 (N.D. Ohio filed Dec. 16, 2013) (Boyko, J.) This Petition was dismissed on March 12, 2014 pursuant to 28 U.S.C. §2243.

-2-

Elkton after complaining of severe knee pain. During the examination, he presented swelling and numbness in his left foot. The physician ordered blood work to address Plaintiff's elevated PSA level and "Hep-C, diabetes neuropathy" and arthritis in his hands.

On December 4, 2013, Plaintiff had a clinical encounter with Defendant J. Griffith. Griffith indicated Plaintiff was previously "on call out on 8/15/13 and was a no show." (Doc. 1-1 at 16.) He was subsequently on "call out for 11/19/13 and was a no show." *Id*. The Physician's Assistant addressed Plaintiff's knee pain, which he described as chronic after Plaintiff fractured his left ankle on an undisclosed date. Plaintiff added that he was told he has HCV, but "[t]here is no documentation of this and he thinks it might have been a mistake." *Id*. Although Plaintiff "signed a refusal that he didn't' want to see the urologist because he was being released and would take care of this when he got out," he still requested that his PSA levels be checked. Griffith stated "I will discuss with Dr. Dunlop to see if it would be appropriate to recheck PSA after only being 4 months since last PSA was drawn." *Id*. At that time, Griffith noted Plaintiff did not have a scheduled release date.

Plaintiff perceives the decision to evaluate the need for another PSA check as a refusal to provide adequate medical care. He claims he initially refused treatment because he thought he was being released to a Residential Reentry Program (RRP). After it appeared that his transfer to a RRP would not be imminent, Plaintiff started to demand immediate testing of his PSA.

In his amended pleading, Plaintiff asserts his Constitutional rights are being violated because he was eligible for transfer to a C.C.C. on January 29, 2014. He maintains the BOP was obligated to transfer him to a C.C.C. for the last six months of his sentence, "regardless of whether the six months exceeded ten of total sentence." (Doc. No. 4 at 5.)

Finally, Plaintiff filed his last supplemental pleading because his circumstances allegedly changed since he filed the original Complaint. Specifically, he argues the Defendants refused to provide him an ADA diabetic diet and adequate snack. While there is no evidence or allegation that he submitted a formal request that was denied, Plaintiff attaches a 2011 Physician's Order

-3-

from the Tennessee Department of Corrections recommending "diet snacks 2 x day x 90 days." (Doc. No. 6-1 at 80.) It is apparent that the recommendation was temporary and there is no allegation or attachment indicating Plaintiff's request to F.C.I. Elkton was ignored or expressly denied.

## Standard of Review

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), a district court is required to dismiss an action under 28 U.S.C. §1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996). For the reasons stated below, this action is dismissed pursuant to section 1915(e).

## Civil Rights Violation

To prevail in a civil rights action under 42 U.S.C. §1983, a plaintiff must plead and prove that the defendants, acting under color of state law, deprived the plaintiff of a right secured by the Constitution and law of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), overruled on other grounds, *Daniels v. Williams*, 474 U.S. 327 (1986). Section 1983 alone creates no substantive rights; rather, it is the means through which a plaintiff may seek redress for deprivations of rights established in the Constitution or federal laws. *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979). The statute applies only if there is a deprivation of a constitutional right. *See e.g., Paul v. Davis*, 424 U.S. 693, 699-701(1976); *Baker*, 443 U.S. at 146-47. Thus, "[t]he first inquiry in any § 1983 suit ... is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws' " of the United States. *Baker*, 443 U.S. at 140.

Plaintiff argues, in part, that the Defendants denied him adequate medical care in violation of the Eighth Amendment of the Constitution. The medical care Plaintiff is seeking varies with each supplemental pleading he filed in this case. In summary, Plaintiff alleges he is

disabled because of sprained knee, is suffering from prostate cancer and may have HCV. Every ailment about which he complains was addressed in the attachments he provided with his original complaint. The Court notes that, underlying his civil rights claim, Plaintiff presumes he had a right to be transferred to a C.C.C. earlier and, that the Defendants' refusal led to the denial of adequate medical care.

"To sustain a cause of action under [Section] 1983 for a failure to provide medical treatment, a plaintiff must establish that the defendants acted with 'deliberate indifference to serious medical needs.'" *Watkins v. City of Battle Creek*, 273 F.3d 682, 685-86 (6th Cir.2001) (quoting *Estelle v. Gamble*, 429 U.S. 97,104 (1976)). There are two critical components to this inquiry: one objective and one subjective. *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). "To satisfy the objective component, the plaintiff must allege that the medical need at issue is 'sufficiently serious.'" *Id*. (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). The Sixth Circuit has stated that the objective component of deliberate indifference in a medical-needs case is met where a plaintiff produces evidence of a "serious medical need." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 896 (6th Cir.2004). The term "serious medical need" was further defined as either "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir.2008)(quoting *Blackmore*, 390 F.3d at 897). "To satisfy the subjective component, the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Id*. at 703.

Relevant facts in the Complaint suggest Plaintiff's prostate cancer represents a serious medical need. The Defendants demonstrated an awareness that Plaintiff faced a substantial risk of harm if he did not agree to a biopsy. Rather than ignore that risk, the Defendants strongly encouraged Plaintiff not to ignore it and documented their concerns along with his express

refusal to consent. Plaintiff does not articulate how long after his refusal he actually consented and requested treatment, however, there is no evidence the Defendants ignored the seriousness of his medical condition.

Having failed to satisfy the objective component, the Defendants' actions do not qualify as an Eighth Amendment claim under the subjective component either. A plaintiff must show that the defendant had "a sufficiently culpable state of mind." *Id*. (internal quotation marks omitted). This state of mind is shown "where 'the official knows of and disregards' " the substantial risk of serious harm facing the detainee. *Id*. (quoting *Farmer*, 511 U.S. at 837). To qualify, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. It is not necessary to establish direct evidence of a defendant's knowledge, but rather, the knowledge aspect can be inferred from the obviousness of the harm stemming from the risk. *See Hope v. Pelzer,* 536 U.S. 730, 738 (2002). Here, when Plaintiff was faced with a substantial risk by virtue of his refusal to submit to a biopsy, it was he, not the Defendants, who chose to delay it. Plaintiff alleges that once he determined his transfer would not be immediate he sought a new test of his PSA levels. He does not state whether he ever agreed to a biopsy, however.

Plaintiff does not present any allegation that would support a claim of deliberate indifference to a serious medical need. This includes his complaint that he was required to have certain dietary snacks because of his diabetes. Although diabetes represents a medical need that must be treated, Plaintiff is not alleging the Defendants refused to provide treatment. He argues, alternatively, that he preferred Interferon and Ribaviron for treatment of his medical needs and wanted snacks recommended for him by the medical staff.

As a matter of law, prisoners are not entitled to unfettered access to the medical treatment of their choice. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citing *Estelle*, 429 U.S. at 103-104). Plaintiff's medical needs were addressed by the Defendants while he was incarcerated at F.C.I. Elkton. The fact that he did not agree with the course of treatment, or

delayed testing based on his anticipated release to a CCA, does not create a violation of the Eighth Amendment.[3]  Therefore, Plaintiff's allegations are simply not sufficient to allow his claim to proceed as a constitutional violation for deliberate indifference to a severe medical condition.

## Conclusion

Based on the foregoing, Plaintiff's Motion to Proceed *In Forma Pauperis* (Doc. No. 2) is **granted**, the Motion for Expedited Review (Doc. No. 8) and Motion for Temporary Restraining Order and/or Motion for Preliminary Injunction (Doc. No. 9) are **denied** and the Complaint is **dismissed** pursuant to 28 U.S.C. §1915(e).  Further, the Court certifies that an appeal from this decision could not be taken in good faith.[4]

IT IS SO ORDERED.

                                                s/ Christopher A. Boyko

                                                CHRISTOPHER A. BOYKO
                                                UNITED STATES DISTRICT JUDGE

DATED: August 8, 2014

---

[3] To the extent Plaintiff was attempting to suggest he had any "right" to an early transfer to a C.C.C., regardless of the length of his sentence, he does not.  Plaintiff has no constitutional right to serve his sentence in a facility more to his choosing.  Congress has vested the BOP "with the right to exercise complete and absolute discretion in matters relating to the incarceration and classification of lawfully convicted prisoner," 18 U.S.C. § 3621; *Moody v. Daggett*, 429 U.S. 78, 88 (1976); *Beard v. Livesay*, 798 F.2d 874 (6th Cir.1986).  There is no constitutional or inherent right of a convicted person to be released before the expiration of a valid sentence. *Greenholtz v. Inmates of Nebraska Penal & Correctional Complex*, 442 U.S. 1, 7 (1979).

[4]  The statute provides in relevant part: "An appeal may not be taken *in forma pauperis* if the trial court certifies in writing that it is not taken in good faith."28 U.S.C. § 1915(a)(3).